Into the next case, Cassie Baldwin against the Judicial Commission 4100375. Counsel, please. May it please the court. My name is Rowan Feamer. I represent the plaintiff and felon, Cassie Baldwin. This issue raises three appeals, the first of which is whether the court had jurisdiction in the first place. The defendant, Appali, argues that they did not based on the fact that an affidavit was filed that the probable cause of the record rather than the actual receipt and that that is contrary to section 19 f1 of the act. However, that is not the case. In fact, 19 f1 requires a party seeking review of the commission decision to file one or the other. It does not require that an actual receipt be filed, but allows the possibility for an attorney to file an affidavit stating that he has paid the probable cost of the record. In fact, the defendant cites the case of Arrington for the proposition that strict compliance is required. Well, in the case of Arrington, it was decided back when 19 f1 did not allow for the filing of an affidavit but demanded that the actual receipt be produced as part of the record. The Arrington court specifically urged the legislature to change this, which they did, and now we have 19 f1 which allows for the filing of an affidavit. So I think that Arrington can clearly be distinguished based on the fact that it was decided prior to the either or option as far as perfecting the issuance of summons. And the defendant finally on the jurisdictional issue argues that because this was two cases below and that we only filed one petition for review, that that did not comply with 19 f1. And they cite the Chicago Transit Authority case for this proposition. I think the CTA case is positive on the issue, but for our side. In CTA, two claims of compensation were consolidated at arbitration and review of each decision was sought with the commission, which issued separate decisions. The respondent then sought review of both commission decisions in the circuit court, but filed only a single request. Ultimately, the court and CTA held that substantial requirement with, I'm sorry, substantial compliance with section 19 f had been shown. And their reason for that was that the section 19 f request involved the same claim, the same employer, and consolidated hearings before the same arbitrator and the commission in one transcript. Those are the exact facts that we have in this case when you look at this issue. And therefore, the circuit court's determination that it did have jurisdiction was correct and should be upheld. What about the merits of the case? Cutting to the chase, and here's what I'm struggling with. The claimant falls descending the stairs. The evidence establishes she was in good health, she never had any problems with her legs, she did not suffer from any medical condition. The testimony does not specifically establish what was the cause of the fall. So why is this not an idiopathic fall, and how is this compensable? Okay, well, first of all, there's two falls, Justice Hudson, and I'll assume that you're referring to both of these falls in your question. Now, the first fall, there was no personal condition to her. I would argue that it was an unexplained fall rather than an idiopathic fall, and the court has distinguished those two types of falls, but the bottom line is, in both cases, with an unexplained or an idiopathic fall, the claimant has to present evidence that there was some increased risk from the employment. That evidence was supplied in this case. What was it? On the first fall? Well, first of all, on the first fall, the increased risk from work simply was, well, the claimant presented... You're not going to make the argument that walking up a flight of stairs is an increased risk, are you? I am arguing that based on the frequency that she was required to do that, there was, and I think that the case law is clear. If you look at the Illinois Consolidated Telephone case, which was cited in our brief, it cites the City of Chicago case, which dates back to 1945. In that case, the court held that the increased risk from the employment can be either So did it say that because she walked up the stairs X number of times in doing her rounds, that she was exposed to some risk greater than the general public? The general public walks up stairs all the time. I agree, but she was required by her job to traverse those steps on a number of times. How many times? Over 20. The general public, yes, we all have occasion to use stairs, but we're not required to do so unless we have occasion to. So I think that's the most obvious increased risk that's apparent. You concede that you introduced no evidence of any defect in the stairs. We introduced photographs that showed the paint had been worn down. I will say that the arbitrator addressed that theory and did find that the stairs were not defective, but I would argue that we did introduce some evidence suggesting there may have been a defect. The freezer. You don't consider that having established the approximate relationship, do you? I do not, your honor, but what I think it shows is that the claimant presented evidence from which a reasonable inference could be drawn that the workplace increased risk of fault. Now, I understand the standard I'm faced with today is very demanding. Using this against the manifest way of the evidence for the commission who rejected that argument. I have a hard time making that argument, your honor. I do make that argument. I won't concede that it was not, but I think the more obvious point here as far as the increased risk is the amount of time this claimant was required to traverse these stairs by the duties of her job. She's a security officer. She has to do these patrols constantly, 20 times plus per night. It's in the medical record. She reports that. It's in her testimony at trial. And the general public is not faced with any requirement that they traverse stairs a particular number of times a day. It doesn't have to be a requirement. You want us to believe that because she walks upstairs 20 times a day that necessarily her employment exposed her to a greater risk. Says who? Says who? If the commission wants to make that finding, the commission can make that finding. I think it's apparent on the face that simply the facts of this case, your honor, the same claimant fell down the stairs at the same employer twice. Post doc ever broke their heart after this? Therefore, because of this? No, your honor, that's what you're arguing. I mean, here, I suppose you could say that because you had to walk up, if you walked up three flights of stairs to get to this courtroom, that you were exposed to a risk greater than the general public because the general public doesn't have to walk up three flights of stairs a day. But who says so? The commission might say so, but does it have to? I think it was against the manifest weight of the evidence that the commission did not find that in this case. I will not say the commission has to in every case say that based on the fact that they're required to traverse steps on a number of occasions per shift that their injury is automatically compensable if they fall on those stairs. But I think when you look at the record and look at how many times this woman was required to do this on a daily basis at her employment, that conclusion is the obvious conclusion. I would briefly like to address the second accident which occurred on November 19, 2006. Now, even if this court finds that there was no increased risk for the first injury based on the fact that the amount of times she was required to traverse the steps did not require but did not obviously show that the correct conclusion was an increased risk, I think the second fall is still compensable. And this would be an idiopathic fall, the second fall because she did have a pre-existing condition with her leg. It was in a weakened state and the increased risk for the second fall, even in the absence of finding the first fall compensable, can be shown based on the fact that this employer put her in a position that required her to walk up and down stairs when her leg was not completely healed. Now, the respondents argued, I apologize, the defendant, Applee, has argued in their brief that she was better at the time she returned to work. Well, she goes back and sees Dr. Austin on November 16, 2006. This is two days, I'm sorry, three days prior to the accident. This report indicates that Ms. Baldwin reported that she was 90 percent improved. Personally, I do not think that that shows that she's symptom free, that she's totally better. Furthermore, she was told to continue home exercises. Why would her treating physician order her to go through a course of home exercise and continue a course of home exercise if her condition was completely resolved? So, I believe that based on the fact that she was still suffering, she was still having problems with that leg following the first accident and the employer put her back in the position that required her to be on her feet all day and walk up and down these stairs, they therefore increased her risk of suffering an idiopathic fall. What evidence establishes that? Did the claimant herself testify that her leg was in a weakened condition and that played some role in her fall? Yeah, the claimant did. First of all, she gave a recorded statement while she was in the hospital following the second fall. Three days later, I believe it was. This would be Exhibit 9. I can't cite to the exact page of the record. I apologize for that. In that recorded statement, she tells the other party, who I'm assuming is from the insurance carrier, she tells that person, I don't think my leg was all the way better at the time I fell. Mind you, this is three days after the accident. So, it's after the fact. She went back and wrote that she was 90% better. I would argue that 90% better does not equate to fully healed. She also testified that she told her employer upon returning to work that she did not feel doing inside guard duty because of the amount of walking and stair climbing it required. And it is disputed by the supervisor she allegedly told that he was home on that day, but he did concede that she had expressed prior concerns after the first fall and very close in time to the second one that her leg was not completely healed. So, I think, Your Honor, to answer your question, it is shown in the record that she was still symptomatic, that she still had problems with that leg. I think, to determine otherwise, would be against the manifest way. What did Dr. Nelson say? Dr. Nelson opined that she had completely recovered from the injury, and he based that on a review of the record. The problem with Dr. Nelson is that Dr. Nelson based his report on his reading of that November 16, 2006, record that indicated I believe she had no pain and was functioning normally. Now, his physical examination was essentially normal. It was normal. That is what the report shows. His opinion was that her fall on October 8 did not cause or contribute to any condition that might have influenced her injury on November 19, and did not believe that any part of the plaintiff's injury on October 8 would have caused her leg to give way and cause additional injury on November 19. Now, that is his opinion. That is true, Your Honor, and I would just like to see his opinion on a review of the medical records. I do not believe that Dr. Nelson actually examined Ms. Baldwin, and furthermore, I think that the fact that he states that she was pain-free as of November 16, it shows a hole in his opinion. Well, that is true, but aren't you then, in essence, saying, isn't that, in essence, an argument that goes to the weight to be given the testimony? It is, Your Honor. Isn't that for the commission, ultimately? I will concede that, and that is a difficult standard to meet, and that is why I think the reason that these two injuries were compensable, that they arose out of the employment, is simpler than it has been made out to be throughout the course of this case. It is simply the fact that she is required, as part of her duty, to traverse these steps on multiple occasions, more than the general public would be. And I think if you accept that theory, which I believe in this case is correct, then it's irrelevant what Dr. Nelson said. It's irrelevant whether or not she, the arbitrator, disregarded the evidence that was presented and did not infer an increased risk. That doesn't matter if this court finds that there was an increased risk based on the amount of time she was required to traverse the steps. That is my position. That is why I believe the decision of the commission was manifest weight of the evidence and should be reversed. Thank you, counsel. Counsel, please. Morning. Members of the court, Robert Doherty appearing on behalf of Respondent Securitas. With regard to the issue on both of these falls, the manifest weight of the evidence is clear. Can we get to the jurisdiction issue first? Sure. Can you tell me on the jurisdictional issue, how this case differs from Chicago Transit Authority? Your Honor, I believe that in the Chicago Transit Authority language of the decision, the language in that decision clearly indicated that the filing of the single appeal in that instance was not to be carte blanche, that in every instance... There's no question. They criticize it. They say it's not the good way of doing it, but the question is, did it deprive the court of jurisdiction? Well, here's where I think it's different. This court recently made the decision in the standards and the legislative mandates for the interpretation of the evidence in that case. In this case, if you're going to apply the strict adherence to the legislative mandates, the legislative mandates require that on each case, a separate appeal must be filed. That each case, you must comply with the requirements. Each decision from the commission came down and specifically set forth the requirements necessary to be followed to appeal. Those requirements were not followed in this case. Why not? Which requirements were left out in which case? Because they did not file two separate appeals. Ah, so you don't contend that any of the requirements of the statute for vested jurisdiction were missing in this case. Your only objection is they filed two as one. Correct. You claim no prejudice. That is not allowed under the Act. You claim no prejudice. There's no prejudice required under the Act. That was what Chicago Transit Authority said you had to claim in order to find no jurisdiction, that as long as all of the requirements of the statute are met and you have no prejudice, Chicago Transit Authority says this isn't a good way of doing it, but it doesn't deprive the court of jurisdiction. But the question that I have for you then is if the court says that's not a good way of doing it, the question is why isn't it a good way of doing it? The answer is simply put that at that time they did not apply or comply with the standards of the Act, of the section of the appeal to the letter. And that's what that court said. They didn't do it, but basically said no harm, no foul. Now we have this court with the interstate scaffold case. It's citing that when they don't, when the commission overreaches and does not comply with the authority and oversteps the bounds given to it by the legislature, that that's improper. In this case, the appeal filed by Ms. Baldwin's attorneys violated the mandates of the legislature. It violated the mandates of the Act. If there is no reason for it to be included in the Act, then the legislature would not have put it in the Act. The legislature in this case put it in the Act. They clearly said what's required. The commission language clearly says what's required. It says they need to file an appeal in both cases separately. It doesn't say you have the option to file one appeal to cover both claims. It says specifically, I'm looking at the decision of the first case, the probable cost of the record to be filed is returned to someone to the sum of $35. It talks about what is the requirement. Section 19F sets forth what is specifically required. In this instance, they did not do it. They took a shortcut and they did not comply with the strict legislative mandate. Jurisdictionally, there's no jurisdiction. That's our argument. Aside from that issue, looking at the merits of the case, opposing counsel has broken this down into a simple argument. He seems to be conceding that there's a neutral risk starting out here. Obviously, walking up and down stairs doesn't expose the employee to a risk that's greater than that faced by the general public, generally speaking. The act of walking up and down stairs is something people do on a daily basis. He is taking it a step further and saying, his trump to that is, look, that may be true, but it's the frequency and the repetitive nature of the job requirements here that go beyond what the general public usually has to encounter. So therefore, I should win whether there's a weakened leg or not. There's a risk here that the general public is not exposed to. That is going up and down stairs repetitively on a daily basis. And your response to that is what? I think you hit it right on the head when you asked the question, why didn't the commission make that ruling? It's the commission's province to make that determination based on the facts of the record. It goes to Justice Hoffman's question that was raised in the prior oral argument. I think we're getting into this situation here at the commission where, if you look at the brief that was filed by Ms. Baldwin's attorneys, they're basically saying, well, it could have been moisture on the floor. It could have been the weather condition of the stairs. They claim that it's the excess of going up and down the stairs, but quite honestly, I didn't see that in this argument to this court. It was made to the circuit court, but I didn't see that argument in this case. And if it's there, then I missed it. I'll concede that. But it's within the province of the arbitrator and the commission to make those findings. They're the finder of fact in this case. We may not agree with it. All five of you may look at this transcript and say, jeez, the commission really missed this one. But the fact is, is there any information upon which the commission could have ruled in the fashion that it did? And the answer in that case is clearly yes. Counsel points to the fact that she was symptom free. Sorry, she was not symptom free. She was only 90% healed. But the other evidence that is presented is the note from Dr. Austin, her treating doctor, that says she's fine. She jumped up and down. She did great. That's on that date. The other evidence in the record is that Officer Doherty, who's no relation to me, said she didn't complain of any problems on the morning of the accident, didn't express any concern. Where she did make that was after she had returned to work following the first accident. I'll have to concede, he seemed to do a good job when he was confronted with that by Justice Hoffman's question of the medical opinion as to the weakened condition. He said, well, that's irrelevant. It's going up and down the stairs. And it was sort of a nifty move, actually, because he knew there was an opinion in the record that would support the commission's decision on the weakened leg. So again, your position is, look, there's evidence in the record to support the commission's decision, irrespective of how many times she goes up and down the stairs. Right. And I'm looking at page 17 of their brief to this court. In the case of Barr, plaintiff's fall clearly constitutes an unexplained fall. First, no evidence suggests plaintiff had any personal condition, which may have supported a finding that the fall was idiopathic. Second, the evidence supports a finding that the plaintiff slipped on stairs as opposed to stumbled on them. Third, plaintiff provided two highly probable causes of the fall. Specifically, plaintiff testified she had noticed moisture on the bottom of her shoes. And when walking through the freezer on prior occasions, I'm sorry, occasions prior to October 8, 2006. So are you saying that Learner Council suggested we need to pick a theory, any theory? Pretty much so. And I think, with all due respect, I believe that that is picking up on Justice Hoffman's comments from earlier today. I think that that is what's happening in a lot of cases at the commission level. That whether you look at the might or could of standards, a lot of times it seems that when we're getting questions on oral argument, when we're receiving decisions, they basically say, well, okay, well, you conceded that might or could, it may have occurred, therefore it did happen. I think people are getting lost as far as the burden of proof. The burden of proof is still by a preponderance of the credible evidence in the record. In this instance, the arbitrator in the commission reviewed the credible evidence and made that finding. But I think a lot of times they think basically, well, okay, one of these reasons has to be there. And I heard it again quoted today. The act is a, it's supposed to, I'm going to get the language incorrect, but it's supposed to have a heart. You're supposed to, it's supposed to be a caring piece of doctrine for the injured workers.  But they still have their burden of proof. And in this instance, the issue in front of you is whether or not the commission's decision was against the manifest way of the evidence. I don't think they've proved that. No reasonable person when confronted with the evidence could have ruled in the fashion that the commission did. I don't see that in this case. Again, you may have ruled on it differently if you were the presider, in fact. But in this instance, I don't think that that's an appropriate, that doesn't meet the standard. Thank you. Very briefly, your honors, just to address the concern that I presented this theory about the repetitive walking up and down stairs for the first time today, it was raised in our brief. If you look at page 17. Page 17 where? Yes, it is the, it's one, it's one sentence at the end of the last paragraph. It adds, if we factor in all the walking on the floor and stairwells required a plaintiff as a security guard, her risk of falling on the steps is greatly increased anyway. If you turn to the following page, we cite the Illinois Consolidated Telephone case, which cites the city of Chicago case that I addressed earlier, for the proposition that the increased risk created by the employment conditions may be qualitative, such as a dangerous set of stairs, or quantitative, such as where an employee is. Counselor, the learner of counsel seems to be acknowledging he stands corrected. So rather than spend your entire time, he's conceding that point. I was almost done anyway, your honor. I believe that the manifest, it was against the manifest way to the evidence for the commission not to find that the fact that she had to walk up these stairs, up and down these stairs repeatedly every shift, I believe it was against the manifest way to the evidence for that, for them to find that she did not sustain accidents arising out of her employment. If you look at the facts of this case alone, this same woman fell down a flight of stairs at work two different occasions. I think that's clear evidence that her risk of falling was increased. And there's no requirement for the general public that they traverse steps any number of times on a given day. And I realize that the next, this begs the question, where do we draw the line here? What if it's two sets of steps a day? What if it's 20? My argument is that based on the number of times she was required to do that, we proved an increased risk and the commission's decision that it did not arise out of the employment was against the manifest way to the evidence and should be reversed as to both accidents. Thank you.